FILED

2016 Mar-31  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| DARONDA KAYE WELCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 6:14-cv-02472-SGC |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Daronda Kaye Welch, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Welch timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Welch did not complete high school or obtain a GED. (Tr. at 35-36). Her last job was as a cashier at a restaurant when she was 16 years old. (*Id.* at 39, 191). In her application for SSI as amended, Welch alleged she became disabled on May

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 16).

4, 2011, as a result of degenerative disc disease and restless leg syndrome. (*Id.* at 185, 190). After her claim was denied, Welch requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 69, 76). Following two hearings, the ALJ denied Welch's claims. (*Id.* at 9-15). Welch was 36 years old when the ALJ issued his decision. (*Id.* at 15, 33, 169). After the Appeals Council declined to review the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Welch initiated this action. (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1)(A); *see also id.* at § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 416.920(a)(4)(i). "Under the first step, the

claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Welch has not engaged in substantial gainful activity since her amended alleged onset date of May 11, 2011. (Tr. at 10).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* at § 416.908; *see also* 42 U.S.C. § 1382c(a)(3)(D). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.920(c).[2] "[A]n impairment can be considered as not severe only if it is a slight

---

[2] Basic work activities include:

    (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing,

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a).  A claimant may be found disabled based on a combination of impairments, even though none of the individual impairments alone is disabling.  20 C.F.R. § 416.923.  The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity.  *Id.* at §§ 416.912(a) and (c).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Welch's morbid obesity constitutes a severe impairment.  (Tr. at 10).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii); *see also id.* at §§ 416.925 and 416.926.  The claimant bears the burden of proving her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant's impairment meets or equals one

---

pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

of the Listings, the Commissioner will find the claimant is disabled.  20 C.F.R §§ 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Welch does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 11).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 416.920(e); *see also id.* at § 416.945.  A claimant's RFC is the most she can do despite her impairments.  *See id.* § 416.945(a)(1).  At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at §§ 416.920(a)(4)(iv) and (e), 416.960(b).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* § 416.960(b)(1).  The claimant bears the burden of proving her impairment prevents her from performing her past relevant work.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(b)(3).  Before proceeding to the fourth step, the ALJ determined Welch has the RFC to perform the full range of sedentary work as

defined in 20 C.F.R. § 416.967(a).[3]   (Tr. at 12).   At the fourth step, the ALJ determined Welch had no past relevant work against which to compare her RFC. (*Id.* at 14).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(v)   and   (g)(1),   404.1560(c)(1),   416.920(a)(4)(v)   and   (g)(1), 416.960(c)(1).   If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.   *Id.*   §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).   If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.   *Id.*   At the fifth step, considering Welch's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Welch can perform, such as those of an installation worker, parts mounter, and

---

[3] This section of the *Code of Federal Regulations* defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

parts screener/inspector.  (Tr. at 14).  Therefore, the ALJ concluded Welch is not disabled.  (*Id.* at 15).

## III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).   "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."   *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. <u>Discussion</u>

On appeal, Welch argues (1) the ALJ failed to address Listing 12.05(C), which she satisfies, (2) the ALJ failed to account for her combination of impairments, which render her disabled, and (3) the ALJ failed to assign proper weight to her treating physician, Dr. Miller.

### A. <u>Listing 12.05(C)</u>

A plaintiff is disabled if her impairment meets or equals a Listing.  20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).   "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. §§ 404.1525(a)-(d)); *see also* 20 C.F.R. §§ 416.925(a)-(d). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. §

404.1526(a)); *see also* 20 C.F.R. § 416.926(a).   A claimant's impairment must meet or equal *all* of the specified medical criteria in a particular Listing for the claimant to be found disabled at step three of the sequential evaluation.   *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).   An impairment that manifests only some of the criteria does not qualify, no matter how severe.   *Id.* at 530.   A claimant's burden of proving her impairment meets or equals a Listing is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary."   *Id.* at 532.

Listing 12.05 provides for an award of benefits based on intellectual disability, which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning[4] initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."   20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05 (introductory paragraph setting forth "diagnostic criteria").   A claimant's intellectual disability is sufficiently severe to meet Listing 12.05 when she has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."   20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(C).

---

[4] "Adaptive functioning is defined as an 'individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age.'" *Compton v. Colvin*, 36 F. Supp. 3d 1263, 1267 (N.D. Ala. 2014) (quoting Programs Operation Manual System DI 24515.056(D)(2)).

Although the ALJ did not discuss Listing 12.05(C) specifically at step three of the sequential evaluation, he was not required to do so.  *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 2015 WL 8732364, at *2 (11th Cir. Dec. 15, 2015) (ALJ not required to mechanically recite evidence or listings considered at step three) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).  "There may be an implied finding that a claimant does not meet a listing."  *Hutchison*, 787 F.2d at 1463.  "Therefore, in the absence of an explicit determination, we may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing."  *Flemming*, 2015 WL 8732364, at *2.  The record in this case supports an implicit finding Welch's impairments do not meet Listing 12.05(C).

To meet Listing 12.05(C), a claimant must satisfy the diagnostic criteria set out in the introductory paragraph and the severity requirement set out in subsection (C).  *See Frame v. Comm'r Soc. Sec. Admin.*, 596 Fed. App'x 908, 910-11 (11th Cir. 2015).  "Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  *See also Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).  "Under [Eleventh

Circuit] precedent, a 'severe' impairment, for purposes of step two, has a 'significant work-related limitation of function' under 12.05(C)." *Rodriguez v. Comm'r of Soc. Sec.*, 2015 WL 9583485, at *2 (11th Cir. Dec. 31, 2015). Here, Dr. Alan Blotchy, a clinical psychologist, administered an intelligence test to Welch and determined she had a full scale IQ of 67. (Tr. at 422). Moreover, at step two of the sequential analysis, the ALJ determined Welch's morbid obesity constituted a severe impairment. (*Id.* at 10-11).

However, the Eleventh Circuit "has recognized that a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)). One court has noted discrediting an IQ score based on evidence of a claimant's daily activities and behavior under subsection (C) and requiring both significantly subaverage general intellectual functioning and deficits in adaptive functioning to satisfy the diagnostic criteria set out in the introductory paragraph of Listing 12.05 are two sides of the same coin. *See Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2010).

The ALJ could have found that Welch's IQ score as derived from the intelligence test administered by Dr. Blotcky was inconsistent with other evidence of Welch's activities and behavior and, therefore, was not conclusive of intellectual

11

disability.  Likewise, the ALJ could have found Welch did not demonstrate the adaptive functioning deficit necessary to satisfy the diagnostic criteria.  *See Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 Fed. App'x 748, 750 (11th Cir. 2011) (holding ALJ could have found claimant's IQ score of 66 was inconsistent with other evidence of his activities and behavior and, therefore, was not conclusive, and that claimant did not have adaptive functioning deficits).  Welch reported her daily activities include taking care of her children and husband, cleaning her house, and cooking dinner.  (Tr. at 197).  More specifically, she wakes her children and gets them ready for school; drives her husband to and from work and takes him lunch; washes clothes, sweeps, mops, dusts, and does dishes; and prepares meals consisting of several courses.  (*Id.* at 197-99).  Welch reported she also cares for a dog and a cat with some assistance from her children and cares for herself with no problem.  (*Id.* at 198).  She further reported she is able to go out alone, talks on the phone with family and friends three or four times per day, regularly goes to church on Wednesdays and Sundays, and regularly attends her children's activities at school.  (*Id.* at 200-01).  According to Welch, she has no problem getting along with family, friends, neighbors, or other people; handles stress "OK;" and handles changes in routine "alright."  (*Id.* at 202-03).  Although Welch testified she reads and writes with difficulty, she reported she reads a book each week.  (*Id.* at 36, 201).  She also reported she is able to pay bills, count change, handle a savings

account, use a checkbook and/or money orders, finish what she starts, pay attention "pretty good," follow written instructions with "no problem," and follow spoken instructions "good." (*Id.* at 200, 202). Finally, in a statement submitted as part of her file, Welch states, "It is my hope that I could possibly get some help to be able to go to a doctor to hopefully try to work in some way." (*Id.* at 545). The foregoing capabilities, reported by Welch herself, together with Welch's own indication she believes she is capable of working, would have been sufficient to discredit Welch's purported IQ score and support a finding Welch did not demonstrate the adaptive functioning deficits necessary to satisfy the diagnostic criteria. *See Hickel v. Comm'r of Soc. Sec.*, 539 Fed. App'x 980, 984 (11th Cir. 2013) (holding evidence claimant was high school graduate, worked part time at nursery, drove herself to work, could prepare simple meals and dress and groom herself, regularly attended church, and socialized with friends was sufficient to support ALJ's finding presumption of disability created by valid full scale IQ score of 63 was rebutted by evidence claimant did not have adaptive functioning deficits); *Garrett v. Astrue*, 244 Fed. App'x 937, 939 (11th Cir. 2007) (holding record supported ALJ's finding claimant with low IQ score did not have adaptive functioning deficits where claimant was able to cook simple meals, perform chores such as dishwashing and yard work, build model cars, and regularly attend church, watch television, play cards, and walk to the mall, and where claimant testified that

with orientation and instruction, he believed he could return to a job as a stock assistant).

Welch notes one court has indicated " '[t]he caselaw addressing the "adaptive functioning" aspect of Listing 12.05(C) suggests that the adaptive functioning must be significantly inconsistent with the I.Q. score,'" and that " '[a]n ability to do simple daily activities and simple jobs is not enough'" to demonstrate an absence of adaptive functioning deficits. (Doc. 13 at 24) (quoting *Monroe*, 726 F. Supp. 2d at 1355). She relies heavily on this court's decision in *Compton v. Colvin*, 36 F. Supp. 3d 1263 (N.D. Ala. 2014), to support her argument she does not have adaptive functioning capabilities sufficient to overcome the presumption of disability created by her low IQ score and serious impairment. (*See* Doc. 13 at 24-25). However, *Compton* is inapposite. In that case, the claimant's abilities were limited to caring for her personal needs; performing minimal, light housework; doing laundry with her husband's help; cooking occasionally; grocery shopping with her husband; going to church occasionally; and spending time with family members. *Compton*, 36 F. Supp. 3d at 1275. Moreover, the claimant testified she would be unable to manage her own financial affairs without assistance. *Id.* at 1269. The court held "[s]ubstantial evidence does not support the ALJ's finding that the claimant has no deficits in adaptive functioning simply because [] she can be around her family and goes places occasionally." *Id.* at

14

1275.  By contrast, Welch reported she cares for herself and others in a variety of ways without assistance; socializes both with family and with friends and attends public gatherings; reads a book per week; and can handle financial matters.  (Tr. at 197-01).  Accordingly, the circumstances present here are less like those present in *Monroe* and more like those present in *Garrett*.

## B. Severity of Impairments

Welch argues the ALJ should have found her low IQ, migraines, and back, right hip, lower extremity, and knee pain to be severe impairments or, at least, that they constitute a severe impairment in combination.  First, even if the ALJ erred in not finding the foregoing impairments to be severe, the error was harmless.

> The specific impairments listed in the step two finding do not affect the outcome of the case.  This is because the Commissioner is obligated to continue with the remaining steps in the sequential evaluation process after finding at least one severe impairment.  Thus, the Commissioner's designation of a claimant's other impairments as "severe" or "non-severe" is of little consequence since all of these impairments must be considered in combination [at step three] and in the RFC determination.

*Law v. Colvin*, 2014 WL 4681188, at *4 (N.D. Ala. Sept. 19, 2014) (citing *Heathy v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010)).  At step two, the ALJ determined Welch's morbid obesity constituted a severe impairment, and it is clear he considered not only this impairment but also Welch's non-severe impairments, including migraines, back pain, and depression at step three and in assessing Welch's RFC.  (*See* Tr. at 11-14 (determining at step three that Welch's

"obesity is not, by itself, or in conjunction with her other impairments, so severe as to prevent her from working" and discussing Welch's back and other pain, fatigue, and depression in assessing her RFC)).  Moreover, the evidence does not support Welch's contention her mental and other physical impairments are severe, alone or in combination.  The above discussion regarding Welch's full scale IQ score viewed in light of her adaptive functioning demonstrates the ALJ's determination Welch had no severe mental impairment is supported by substantial evidence.  As discussed below, the objective medical evidence does not support the degree of limitation Welch alleges her migraines and back, right hip, lower extremity, and knee pain cause but, rather, indicates her migraines and lower back pain were controlled with medication, which allowed her to go about her daily activities.

To the extent Welch argues the ALJ improperly discredited her own statements regarding her pain and its limiting effects, this argument is without merit.  An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if she "clearly 'articulate[s] explicit and adequate reasons'" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.  In determining credibility, an ALJ may consider objective medical evidence, medical opinions, and a claimant's reported

daily activities, amongst other things.  20 C.F.R. § 404.1529(c).  Here, the ALJ found Welch's statements regarding the extent and limiting effects of her pain are not fully credible because they are inconsistent with the evidence.  (Tr. at 13).  The ALJ noted Welch reported a long list of activities she is capable of performing. (*Id.*).  Furthermore, as discussed below, Welch consistently reported to her treating physician that her pain was controlled with prescription pain medications. Accordingly, substantial evidence supports the ALJ's sufficiently articulated reason for discrediting Welch's statements regarding her pain.

### C. Weight Assigned to Medical Opinions

An ALJ may disregard a treating physician's opinion if he articulates good cause for doing so.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Winschel*, 631 F.3d at 1179 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (ALJ properly discounted treating physician's opinion claimant was disabled because, amongst other things, that opinion appeared to be based primarily on claimant's subjective complaints of pain).

The ALJ assigned little weight to three opinions offered by Dr. Lorn Miller,

Welch's primary care physician.  (Tr. at 13).  He discredited Dr. Miller's opinion that Welch's reported physical limitations—i.e., that she could sit for no more than 30 minutes at a time, stand for no more than 10-15 minutes at a time, etc.—were consistent with Welch's reports to him because the opinion is not supported by objective medical evidence.  (*Id.*).  He discredited Dr. Miller's opinion regarding Welch's mental health because Dr. Miller is a neurologist, not a mental health professional.  (*Id.*).  Finally, he discredited Dr. Miller's opinion Welch would miss 75-90 days of work per year because the opinion is not supported by the evidence and, in fact, is inconsistent with Welch's report of her daily activities.  (*Id.*).

Substantial evidence supports the ALJ's reasons for discrediting Dr. Miller's opinions.  The record is lacking in objective medical evidence that would support the degree of physical or psychiatric functional limitation alleged by Welch and opined by Dr.Miller.  Moreover, Dr. Miller's opinions as to Welch's functional limitations are inconsistent with the improvement Welch reported to Dr. Miller. Welch first presented to Dr. Miller in December 2007 with lower back pain she attributed to a fall in 2006.  (*Id.* at 336).  A CT scan done at the time of her fall showed degenerative disc disease and bulging discs at L2 and L5.  (*Id.*).  However, Welch reported prescription pain medication made the pain tolerable.  (*Id.*). Between February 2008 and May 2010, Welch consistently reported her lower back pain had not increased or decreased in severity or frequency and was

controlled with prescription pain medication, which enabled her to take care of herself and her household.   (*Id.* at 286, 293, 299, 305, 312, 318, 324, 330). Although in September 2010, Welch reported her lower back pain as a little worse, she also reported prescription pain medication made the pain tolerable.   (*Id.* at 278).   Between January 2011 and November 2012, Welch continued to report prescription pain medication made her pain tolerable or at least controlled her pain and allowed her to undertake activities such as cleaning her house.   (*Id.* at 248, 256, 427, 433, 439, 445).   After Welch requested medication for restless leg syndrome in September 2010, she consistently reported the medication controlled her symptoms.  (*Id.* at 248, 256, 278).

Contrary to Welch's assertion, the ALJ did not substitute his own judgment for that of Dr. Miller.   Although an ALJ may not arbitrarily substitute his own judgment for that of a medical professional, *see Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982), that is not what the ALJ did in this case.  Rather, the ALJ considered Dr. Miller's opinions and gave valid reasons for assigning them little weight.

Welch makes a passing reference to the ALJ's decision to discredit Dr. Blotcky's opinion.  (*See* Doc. 13 at 35).  The ALJ found Dr. Blotcky's opinion Welch has a Global Assessment of Functioning Score of 49, which represents a serious impairment in mental functioning, was entitled to little weight because it is

inconsistent with Welch's own report of her abilities to Dr. Blotcky, including that she can perform light housework, prepare simple meals, watch television, drive a car, visit with friends at her home, and visit her mother and sister on a regular basis. (Tr. at 10-11). Because he articulated the weight given to Dr. Blotcky's opinion and the reason for assigning the opinion such weight, and because that reason is supported by substantial evidence, the ALJ did not err in discrediting Dr. Blotcky's opinion. *See* 20 C.F.R. § 416.927(c) (ALJ may consider examining relationship, treatment relationship, supportability, and consistency when deciding what weight to give to medical opinions). Unlike Dr. Miller's opinions, Dr. Blotcky's opinion was not entitled to controlling weight because Dr. Blotcky was not one of Welch's treating physicians. *See* 20 C.F.R. § 416.927(c) (2) ("Generally, we give more weight to opinions from your treating sources . . . ."). Rather, she was referred to Dr. Blotcky for a psychological evaluation by her attorney. (Tr. at 421).

## V.   <u>Conclusion</u>

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 31st day of March, 2016.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE